## The Baltimore Traction Company *vs.* Charlotte Wallace.

*Cable Car Companies — Negligence — Contributory negligence—Measure of Damages.*

In a large and populous city, where street passenger railway cars are propelled by agencies capable of attaining a speed of ten or twelve miles an hour, it is of the greatest importance to enforce the rule, that it is the duty of drivers of cars, not only to see that the railroad track is clear, but also to exercise a constant watchfulness for persons who may be approaching the track.

In an action to recover damages for injuries sustained by the plaintiff who was run over by a cable car, where there was evidence tending to show contributory negligence on the part of the plaintiff, it was Held:

1st. That it was proper to instruct the jury, that even if there was want of ordinary care on the part of the plaintiff, yet she was entitled to recover, provided that after the defendant's servants, having charge of the car, saw the plaintiff on the track, or might by proper care have seen her, they could have avoided the injury by ordinary care in the management of the car.

2nd. That if the plaintiff placed herself in the way of the car, where it could not be arrested in its course, and under circumstances where, with ordinary care on the part of the gripman, the car could not be brought to a pause early enough to prevent the injury, the defendant was not liable.

3rd. That the defendant was not relieved from the charge of negligence by proof that the gripman, as soon as he saw the danger to the plaintiff, used all the means in his power to stop the car, unless it was also in proof that he would not by the exercise of ordinary care in keeping a lookout have been able to see it.

4th. That a prayer correctly stated the measure of damages, which instructed the jury, that if they found for the plaintiff they might consider "the character of the injuries received by her, how far they disabled her from pursuing her ordinary occupation,

and also the physical and mental suffering to which she was subjected by reason of such injuries, and allow such damages as in their judgment would be a fair and just compensation for the same."

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the three following prayers which were granted by the Court, (HARLAN, J.):

1. If the jury find from the evidence that on or about the 3rd of February, 1892, Charlotte Wallace, while lawfully walking upon Druid Hill avenue at or near Orchard street, was struck and knocked down by a cable car, operated by the agent or servants of the defendant company, and was injured in the way and manner set forth in the declaration, and further that said injury resulted from a want of ordinary care and prudence on the part of the defendant, its agents or servants, as aforesaid, and without any fault on the part of the said Charlotte thereunto contributing, then their verdict must be for the plaintiff.

5. Even if the jury believes that the said Charlotte Wallace was guilty of the want of ordinary care and prudence in crossing the tracks of the defendant, under the circumstances testified to before them, yet if they further find that after the agents or servants of the defendant having charge of the said cable car saw, or by the exercise of proper care and caution in keeping a lookout, might have seen, the said Charlotte Wallace upon said track, they could then and there, by the exercise of ordinary care and caution in the management of the said car, have avoided the injury complained of, then the plaintiff is entitled to recover.

6. If the jury find for the plaintiff, they may consider the character of the injuries received by her, how far they disabled her from pursuing her ordinary occupation, and also the physical and mental suffering to which she was subjected by reason of such injuries, and allow such damages as in their judgment would be a fair and just compensation for the same.

The Court further instructed the jury as follows:

If the jury find from the evidence that the plaintiff interposed herself in the way of the car of the defendant, where it could not be arrested in its course, and under circumstances where, with ordinary care on the part of the gripman, the car could not be brought to a pause early enough to have prevented the injury complained of, the defendant is not liable.

The defendant offered the four following prayers, which were rejected by the Court:

1. That upon the pleadings and evidence in this case the plaintiff is not entitled to recover, because there is no evidence that the injury to the plaintiff, mentioned in the declaration, resulted from any want of care on the part of the defendant or its employés.

2. That if the jury shall find from the evidence that the car of the defendant mentioned in the evidence, had its head light burning, and that the gripman in charge thereof, gave the usual signals with the gong before reaching the place where the accident happened, and that as soon as the gripman saw the danger to the plaintiff he put down the brake, and used all means in his power to stop the car, then their verdict must be for the defendant, although they may find that the plaintiff did not in fact see the car or know of its approach.

3. That if the jury believe from the evidence that a reasonably careful and prudent person, by the use of due care, could have seen an approaching car of the defendant, from the point where the plaintiff testified she left

the sidewalk, for a distance of at least one block down the street, and the plaintiff was not prevented by any omission or neglect on the part of the defendant or its employés from having full opportunity to know of the approach of the car which caused the accident, and that if she had had such knowledge said accident would not have occurred, that then the accident which caused the injury was due to the contributory negligence of the plaintiff, and the plaintiff is not entitled to recover.

4. That upon the pleadings and evidence the plaintiff is not entitled to recover, because it appears from the undisputed evidence in the case that the plaintiff was guilty of negligence, which directly contributed to cause the accident complained of in the declaration, and there is no evidence that after the defendant's employés became aware of the danger of the plaintiff they could by the exercise of ordinary diligence have avoided the consequences of the plaintiff's negligence.

The defendant excepted, and the verdict and judgment being against it, appealed.

The cause was argued before ALVEY, C. J., BRYAN, FOWLER, PAGE, ROBERTS, McSHERRY, and BRISCOE, J.

*N. Penniman Bond,* (with whom were *Robert D. Morrison,* and *Howard Munnikhuysen,* on the brief,) for the appellant.

*Albert C. Applegarth* and *Henry H. Goldsborough,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

Charlotte Wallace, a *féme sole,* while crossing a track of the Baltimore Traction Company, was knocked down by one of its cars, and sustained serious and severe

Baltimore Traction Co. *vs.* Wallace.

bodily injuries. She brought suit against the company, and recovered a judgment for $750. The principal questions arising in the case are whether the accident was caused by the negligence of the defendant; and whether there was contributory negligence on the part of the plaintiff. It is necessary to examine the testimony in the record to ascertain what evidence was before the jury on these questions. The plaintiff testified that she was a domestic servant, and that at the time of the accident she was living at No. 827 Druid Hill avenue, and that about seven o'clock in the evening she was sent by her employer to get milk for tea, and that she proceeded to cross Druid Hill avenue to go to a store on the other side of the street; that while still on the pavement, close to the curbstone, she looked up and down the street to see if a car was coming, and that she also listened, but, neither hearing nor seeing one, she proceeded on her way across the street, and that she knew nothing more until she found herself lying on the pavement, and learned that she had been struck by a car. She further testified that the accident occurred in the month of February, when it was rather dark at seven o'clock in the evening, and that there was a curve in the street about half a block below the place where she lived, and that this curve prevented any one coming out of the house where she lived from seeing a car coming from Paca street, until he or she got well out towards the curb, or until it got around the curve; that she was crippled and could not walk very fast. In coming into Druid Hill avenue the car turned a corner at Paca street. The distance of this corner from the place where the accident occurred is not stated in the record. One of the witnesses testified that it took the car about a minute to run from Paca street to the place where the accident took place. The gripman in charge of the car testified that the full speed of the car was ten or twelve

miles an hour, and that it was going at about half speed, perhaps a little faster; that he had commenced to slack up, because he was approaching Biddle street. Supposing, then, that the car was running at the rate of five miles an hour, it would go more than one hundred and forty-six yards in a minute. It was a legitimate question, then, for the jury, on the testimony of the plaintiff, whether she did not exercise all reasonable care. If, when she stopped and looked, the car had not turned the corner of Paca street, it was impossible for her to see it, and if the jury believed that it passed over the intervening space in the period of a minute, they could well find that she was caught on the track without negligence on her part. One minute was rather a short time for a cripple to get out of the way, who had started on her way across the street, after having made an examination of the railroad track and found it clear. Finding it clear, it was not unreasonable for her to proceed to cross without fear of danger. It will, of course, be understood that we speak of the evidence as it appears in the record, without forming any opinion of its credibility. It was within the province of the jury to give or refuse their belief to it, as they should see fit. One of the witnesses for the defendant testified that the plaintiff had a shawl over her head; this might tend to obscure her view of the tracks. She, however, denied the fact, and it was for the jury to decide the question. Two witnesses testified that they saw the plaintiff approaching the track, and they hallooed to her, but she did not stop. It is probable that she did not hear them. One of these witnesses says that he was about fifteen yards distant when he called to her, and the other says that he was about half way between Moore's alley and Biddle street. The distance from Moore's alley to Biddle street, according to the testimony, is about a hundred feet. The gripman in charge of the car testi-

fied that he did not see the plaintiff until she was about five feet away from the car, and that he could not bring the car to a stop within less than twenty or twenty-five feet. If he had seen her as soon as the two witnesses who called to her, he might have stopped the car in time to avoid the accident. It was, however, a fair question for the jury whether he could not have seen her sooner than he did if he had been as vigilant as he ought to have been. In *Baltimore City Pass. Railway vs. McDonnell*, 43 *Md.*, 552, it was said: "It was contended by the counsel of the defendant that if the driver saw that the railroad track was clear, and no one upon it, he had performed all that ordinary care and prudence required of him, and it was not for him to suppose that any one would put himself in the way of the car by attempting to cross in front of it. In a large populous city where all descriptions of vehicles are constantly passing and repassing, as well as persons on foot, including the aged and infirm, as also children who are young and wanting in prudence and discretion, it is the duty of drivers of cars not only to see that the railroad track is clear, but also to exercise a constant watchfulness for persons who may be approaching the track. Unless he does so, he does not exercise that ordinary care and prudence which the law imposes on him."

It is of the greatest importance to enforce this rule in cases where cars are propelled, as in this instance, by agencies capable of attaining a speed of ten or twelve miles an hour. If the jury inferred from the evidence before them that by ordinary care the gripman could have seen the plaintiff in time to avoid running over her, it was perfectly competent for them to make that deduction from the evidence. The statements which we have made dispose of the prayers in the cause. Three prayers were granted in behalf of the plaintiff, which are numbered in the record respectively, as first, fifth and

sixth.   The first prayer left it to the jury to find
whether the injury resulted from a want of ordinary care
on the part of the defendant, without any contributory
negligence on the part of the plaintiff.   The fifth prayer
maintains that even if there was want of care on the part
of the plaintiff, yet she is entitled to recover, provided
that, after the defendant's servants having charge of the
car saw the plaintiff on the track, or might by proper
care have seen her, they might have avoided the injury
by ordinary care in the management of the car.   It
would have been better if this prayer had presented the
question whether the defendant could have avoided the
accident by ordinary care after it saw the plaintiff in a
condition of danger, or might by ordinary care have seen
her, instead of saying after it saw her, or might have
seen her, on the track.   The duty of the defendant was
the same, whether the plaintiff was on the track or was
approaching the track under circumstances of peril.   We
think this prayer correctly stated the law.   The question
is settled in *People's Passenger Railway Company of Bal-
timore vs. Green*, 56 *Md.*, 84, and in *Kean vs. Balto. &
Ohio R. R. Company*, 61 *Md.*, 167.   The plaintiff's sixth
prayer correctly stated the measure of damages.   The
Court gave an instruction of its own, to the effect that if
the plaintiff placed herself in the way of the car, where
it could not be arrested in its course and under circum-
stances where, with ordinary care on the part of the
gripman, the car could not be brought to a pause early
enough to prevent the injury, the defendant was not
liable.   We think that these instructions put the case
fully and fairly before the jury.   The defendant offered
four prayers, all of which were rejected by the Court.
The first and fourth sought to take the case from the
jury.   The second prayer asserts that if the car had its
headlight burning, and the gripman in charge gave the
usual signals before reaching the place of the accident,

and that as soon as he saw the danger to the plaintiff he used all means in his power to stop the car, the verdict ought to be for the defendant. This prayer confines the question to the time when the gripman saw the danger to the plaintiff. It ought to have embraced the time when, by ordinary care, he could have seen it. It was his duty to keep a vigilant watch for persons who might be approaching the track. The defendant's third prayer was in these words: "That if they believe from the evidence that a reasonably careful and prudent person, by the use of due care, could have seen an approaching car of the defendant, from the point where the plaintiff testified she left the sidewalk for a distance of at least one block down the street, and the plaintiff was not prevented by any omission or neglect on the part of the defendant or its employés from having full opportunity to know of the approach of the car which caused the accident, and that if she had had such knowledge said accident would not have occurred, that then the accident which caused the injury was due to the contributory negligence of the plaintiff, and the plaintiff is not entitled to recover." The terms of this prayer are rather misleading. The proper inquiry was whether the plaintiff, by due care, might have seen the approach of the car in time to escape injury. There was no propriety in asking the jury to consider whether the plaintiff could have seen a car at the distance of one block from the point where she left the sidewalk, unless the car was at that distance at the time she did leave the sidewalk. If the car was not at this distance, but was around the corner, in Paca street, this inquiry was irrelevant. If the car was not in sight, it could not be negligence on her part to attempt to cross ; and if the car came upon her and caught her in the space of one minute, while she, a cripple, was crossing the track, we could not withdraw the question of contributory negligence from the jury,

and make it a question of law, without a calculation of chances too nice for the Court to make.    In our opinion the case was properly left to the jury, and the judgment ought to be affirmed.

*Judgment affirmed.*

(Decided 21st April, 1893.)